UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

NORA C. PULINSKI,

                Plaintiff,

v.                                          **ORDER**
                                         03-CV-590S

ECKERD CORPORATION, and
COCA-COLA BOTTLING COMPANY,

                Defendants.

      1.     On July 9, 2003, Plaintiff Nora Pulinski commenced this personal injury action by filing a Summons and Complaint in New York State Supreme Court, Erie County. Defendant Eckerd Corporation ("Eckerd") removed this action to the United States District Court for the Western District of New York on August 4, 2003. Plaintiff alleges that while shopping at an Eckerd store, she was seriously injured when a Coca-Cola display fell on her.

      2.     Currently before this Court is Defendant Eckerd's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rule of Civil Procedure, which was filed on August 15, 2005.[1] This Court heard oral argument on the Motion on November 7, 2005, and reserved decision at that time. For the following reasons, Defendant Eckerd's Motion is denied.

      3.     The following facts are undisputed for purposes of the instant Motion except

---

[1] In support of its Motion, Eckerd filed an attorney affidavit with numerous exhibits, a memorandum of law, a reply memorandum of law, a reply attorney affidavit, and a reply affidavit by Kara Zupo. In opposition to the Motion, Plaintiff filed a statement of disputed facts pursuant to Rule 56 of the Federal Rules of Civil Procedure, an attorney affidavit and a memorandum of law.

1

where indicated.  The Eckerd store located in Tonawanda, New York, sells Coca-Cola products which are delivered twice weekly by the Coca-Cola Bottling Company of Buffalo ("Coca-Cola Buffalo").  (Pl.'s State., ¶ 1(c)).  The Coca-Cola products are stocked on shelves and in a free-standing display in the back of the Eckerd store.  (Pl.'s State., ¶ 1(d)). Typically, the Coca-Cola display, which has been in the same Eckerd designated location since April of 2002, is created by a "merchandiser" employed by Coca-Cola Buffalo, and if necessary, replenished by an Eckerd employee.  (Pl.'s State., ¶ 1(e)).  It normally takes a merchandiser between 20 to 40 minutes to construct the display.  (Zupo Reply Aff., ¶ 11; Herman Aff., ¶ 6).  The Eckerd store manager and Coca-Cola Buffalo's account manager determine which, and how many, Coca-Cola products Eckerd wants in the display.  (Pl.'s State., Ex. C, p. 13).

The normal height of the display is five feet and five inches tall, consistent with the requirement that the top of the display can be reached by a customer.  (Pl.'s State., ¶ 1(f)). Kara Zupo, an Eckerd service assistant, is charged with ensuring that the display is not unstable or stacked too high or that the twelve packs of Coca-Cola do not hang over the edge of the platform at the base of the display.  (Pl.'s State., ¶ 1(a) & (h-i)).

On Tuesday, May 28, 2002, Coca-Cola Buffalo made a large delivery to the Eckerd store at approximately 2:30 p.m.  (Pl.'s State., ¶ 1(j)).  Some time before 3:30 p.m. that day, a Coca-Cola Buffalo merchandiser stocked the display in an atypical manner, placing an extra row of twelve packs on the platform such that they hung over the base of the display. (Pl.'s State., ¶ 1(k-l)).  At approximately 3:30 p.m., when Plaintiff attempted to take a twelve pack from the top of the display, several twelve packs fell on her, causing serious injuries to her neck, left shoulder, right wrist and left foot.  (Pl.'s State., ¶ 1(n & p)).

According to Ms. Zupo, no one from Eckerd had checked the display before the accident. (Pl.'s State., ¶ 1(m)).

4. Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

On motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

5. To establish a *prima facie* case of negligence under New York law, a plaintiff must prove: (1) that Defendant owed her a duty of care; (2) that Defendant breached that duty; and (3) that the breach proximately caused her to suffer damages. Di Benedetto v. Pan Am World Service, Inc., 359 F.3d 627, 630 (2d Cir. 2004); Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (1985). In a premises liability case such as this, a plaintiff must present evidence that the defendant created, or had actual or constructive notice of, the dangerous condition. Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 837

(1986); Ohlsson v. JBC Bowl Corp., No. 99-CV-890E(F), 2001 WL 1117162, at *4 (W.D.N.Y. Sep. 14, 2001). Moreover, where actual or constructive notice is alleged, liability cannot be imposed unless a plaintiff also can show that the defendant had a reasonable opportunity to correct the dangerous condition. Putnam v. Stout, 38 N.Y.2d 607, 612 (1976).

6. In the present case, there is no dispute that Eckerd, as the owner of the premises where Plaintiff was shopping, owed her a duty of care. However, Eckerd argues that it is entitled to summary judgment because Plaintiff cannot establish that it created the display or that it had actual or constructive notice of the dangerous condition. This Court will address each argument in turn.

7. On the record before this Court, it cannot be said that Eckerd created the dangerous condition. The record reflects that a Coca-Cola Buffalo merchandiser constructed the display some time between 2:30 p.m., the approximate time of the delivery, and 3:30 p.m., the approximate time of the accident. It is undisputed that the merchandiser constructed the display in an atypical manner, by stocking it with an additional row of twelve packs such that they hung over the platform at the base of the display. It normally takes a merchandiser between 20 and 40 minutes to construct a display. There is no evidence that any Eckerd employee replenished or otherwise altered the display in the short time period between its construction and the time of the accident.

Plaintiff alleges that Eckerd created the dangerous condition because it furnished the platform that forms the base of the display, designated the location of the display within the store, and determined the products from which the display was constructed. However, there is no evidence that the display fell because of some defect in the platform base, or because the location of the display within the store was problematic, or because the

display was constructed with a particular Coca-Cola product.  Accordingly, Plaintiff must demonstrate that Eckerd had either actual or constructive notice of the dangerous condition.

8.   A defendant is said to have actual notice of a defect if it created the defect or gained actual knowledge of the defect's existence.  <u>Ducrepin v. United States</u>, 964 F. Supp. 659, 664 (E.D.N.Y. 1997) (<u>citing</u> <u>McHale v. Westcott</u>, 893 F.Supp. 143, 148-49 (N.D.N.Y.1995).  In the instant case, Plaintiff has failed to present any evidence that contradicts Ms. Zupo's testimony that she did not inspect the display after it was constructed.  (Pl.'s State., ¶ 1(m)).  Moreover, on the record before this Court, there is no evidence that anybody reported that the display was unstable, too high or otherwise dangerous.  <u>See</u>, <u>e.g.</u>, <u>Woodford v. Hilton Hotels Corp.</u>, 914 F. Supp. 835, 838 (N.D.N.Y. 1996).  Accordingly, there is no evidence from which a reasonable jury could infer that Eckerd had actual notice that the display was defectively constructed.

9.   "A defendant has constructive notice of a defect if the defect is 'visible and apparent' and 'in existence for a sufficient period of time before the accident so that the defendant could discover and remedy it.'"  <u>McHale</u>, 893 F.Supp. at 148-49 (<u>quoting</u> <u>Hammond-Warner v. United States</u>, 797 F.Supp. at 211).  This Court finds that there is a genuine issue as to whether the defect in the display was visible and apparent.  As an initial matter, it is undisputed that the display stood over five feet tall and was constructed such that the twelve packs hung over the platform base by approximately one inch on the day of the accident.  (<u>Snyder Aff.</u>, ¶ 23 & Ex. L).[2]  According to Ms. Zupo, the Coca-Cola merchandisers typically stacked the twelve packs flush with the platform.  (<u>Snyder Aff.</u>, ¶

---

[2]   In describing the atypical display, Ms. Zupo testified "if we had seen the Coke display stacked that way, we would have fixed it before the accident happened."  (<u>Pl.'s State.</u>, Ex. B, pp. 25-26).

5

23). Whether this defect in the construction of the display was visible and apparent is a question of fact that is best left to a jury.

Moreover, this Court finds that there is a genuine issue as to whether the overhang existed long enough for Eckerd to discover and fix it. As previously noted herein, Coca-Cola Buffalo delivered the products to Eckerd at approximately 2:30 p.m. A merchandiser thereafter constructed the display, a process which took between 20 and 40 minutes. The accident occurred at approximately 3:30 p.m. Viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could find that the overhang existed for 40 minutes prior to the accident. This is a sufficient period of time under New York law to establish a prima facie case of premises liability based on constructive notice. See Negri v. Stop and Shop, Inc., 65 N.Y.2d 625 (1985) (holding that circumstantial evidence that broken jars of baby food were on the floor for fifteen to twenty minutes tended to show that supermarket had constructive notice of the dangerous condition); see also Greco v. Acme Super Markets, 17 A.D.2d 899 (4th Dep't 1962) (holding that evidence that melted ice-cream was on the floor of the defendant super market for thirty minutes created a question of fact as to whether it had constructive notice of the dangerous condition). Because there is a genuine issue as to how long the overhang existed, Eckerd cannot prevail on its motion for summary judgment.

10.   On the record before this Court, genuine issues exist as to whether the overhang was visible and apparent and whether it existed for a sufficient period of time for Eckerd's employees to discover and fix it. Accordingly, Eckerd's Motion for Summary Judgment must be denied.

IT HEREBY IS ORDERED, that Defendant Eckerd's Motion for Summary Judgment

(Docket No. 36) is DENIED.

      SO ORDERED.

Dated:  March 7, 2006
       Buffalo, New York

                                        ___
                                      <u>/s/William M. Skretny</u>
                                       WILLIAM M. SKRETNY
                                    United States District Judge